Filed 12/30/24  P. v. Johnson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ELLIS EDWARD JOHNSON,<br><br>        Defendant and Appellant. | A168691<br><br>(San Mateo County<br>Super. Ct. No. SC016867A) |

Defendant Ellis Johnson filed a petition for resentencing pursuant to Penal Code section 1172.6.[1]  The trial court denied his petition at the prima facie stage.  Defendant contends this was error because the court relied on the preliminary hearing transcript to make a factual determination that he was the actual killer and so ineligible for relief.  He further contends the charging document and his admission to a knife use allegation did not

---

[1]     All further undesignated statutory references are to the Penal Code.  Defendant filed this petition pursuant to section 1170.95, but section 1170.95 has been renumbered to section 1172.6.  (Stats. 2022, ch. 58, § 10; see *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)  As such, we will refer to section 1172.6, but also refer to section 1170.95 as necessary to conform to the record.

1

establish his ineligibility. Even assuming the trial court could consider the preliminary hearing evidence, we conclude the record of conviction does not conclusively establish defendant's ineligibility for relief. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, the People charged defendant by information with "willfully, unlawfully and feloniously, and with malice aforethought" murdering Lulu Walker. The People further alleged defendant personally used a knife during the commission of the offense (§ 12022, subd. (b)), and also alleged a robbery-murder special circumstance (former § 190.2, subd. (a)(17)(i)). Additionally, the People charged defendant with a single count of robbery (§ 211). No codefendants were charged.

The evidence at defendant's preliminary hearing included the following. On the evening of May 8, 1986, defendant went to the victim's home several times over the course of a few hours to borrow money to buy drugs. A female housemate of defendant drove him to the victim's home at around 4:30 or 5:00 p.m., then took him "around the corner" to buy drugs, and then drove him back home. She did this for him again at about 6:30 or 7:00 p.m. Defendant's male housemate later took him to the victim's home and to buy drugs five more times that night. The victim's son was at the house when defendant came over at around 7:45 p.m., and he saw defendant leave after hearing him ask the victim to borrow $25. The victim's son left his mother's house at around 8:45 p.m.

Defendant's male housemate testified that during one of the five trips to the victim's house, defendant brought two suits to leave with the victim to "pawn" for money. After the last trip at around midnight, defendant exited the victim's home and asked his male housemate to turn off his vehicle

2

headlights and to take a different route than the one taken previously. As they drove away, defendant wiped his hand on a "little" piece of paper and threw the paper out of the window. When defendant later asked his male housemate to take him back to the victim's house at around 1:30 or 2:00 a.m., the housemate refused and did not see defendant again until the next day.

The victim's body was discovered the next day at around 3:30 p.m. A purse and money that she kept in a cigarette case on her nightstand were missing. Also the next day, the female housemate who had driven defendant to the victim's home saw defendant and "a couple of other guys" associated with a blue car bring three suits back home. Eventually, an investigating officer noticed defendant had red stains, which turned out to be blood, on his shoes. The blood type on the shoes matched the victim's blood type, and not defendant's. An autopsy established the victim died from exsanguination due to multiple stab wounds to her face, trunk, and arm.

Defendant ultimately pled no contest to first degree murder and admitted the knife use enhancement. Defendant's plea form reflects his attorney and the district attorney stipulated to a factual basis for the plea, but does not specify any particular document as providing that factual basis. In accord with the plea agreement, the trial court dismissed the special circumstance and the robbery count, fixed the degree of murder at first degree, and sentenced defendant to 26 years to life in prison with the possibility of parole.

In March 2023, defendant filed a form petition for resentencing pursuant to former section 1170.95. His petition checked boxes indicating that: (1) a charging document was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of murder following his

plea; and (3) he could not now be convicted of murder because of changes made to sections 188 and 189 effective January 1, 2019.

The court appointed counsel for defendant, and the parties filed briefs addressing whether defendant made a prima facie showing of entitlement to relief. Relying on a copy of the preliminary hearing transcript, the information, the abstract of judgment, and the change of plea form, the People contended the record of conviction conclusively established that defendant was the actual killer. Defendant, however, argued the People could not rely on the preliminary hearing transcript at the prima facie stage, and claimed that, in any event, the transcript did not establish his ineligibility for relief as a matter of law.

In August 2023, the trial court denied the petition without issuing an order to show cause, finding defendant failed to state a prima facie case for relief. Specifically, the court found defendant was the actual killer based on his plea to first degree murder, his admission to the personal knife use enhancement, and the preliminary hearing evidence, which contained no indication that any accomplices were involved or that anyone else was the actual killer. This appeal followed.

## DISCUSSION

The issue on appeal is whether the resentencing court erred in denying the section 1172.6 petition at the prima facie stage. We review de novo whether a petition is properly denied at the prima facie stage. (*People v. William* (2022) 86 Cal.App.5th 1244, 1251.)

### A. General Principles

In 2018, the Legislature passed Senate Bill No. 1437 (Senate Bill 1437) " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability

4

is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Senate Bill 1437 amended the law of felony murder by amending section 189. At all relevant times in this case, section 189 has provided that a murder committed in the actual or attempted perpetration of robbery is murder of the first degree. (§ 189, subd. (a); see Stats. 1982, ch. 949, § 1, ch. 950, § 1.) Senate Bill 1437 added subdivision (e) to section 189, which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3): " 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

Senate Bill 1437 additionally added section 1170.95, later renumbered section 1172.6, providing a procedure "for convicted murderers who could not

5

be convicted under the law as amended to retroactively seek relief." (*Lewis, supra,* 11 Cal.5th at p. 959.)  Presently, the statute provides:  "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . .  [¶] (2) The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder . . . .  [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(1)–(3).)

Under section 1172.6, the parties shall be given "an opportunity to submit briefings," and the court shall thereafter "hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c).)  The California Supreme Court has provided the following guidance for the conduct of such hearings.  "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis, supra,* 11 Cal.5th at p. 971.)  That said, "[w]hile the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief,

6

the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Lewis*, at p. 971.)  Importantly, a petition may be denied at the prima facie stage only " '[i]f the petition and record in the case establish *conclusively* that the defendant is ineligible for relief.' "  (*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*), italics added.)

## B.  Analysis

Mindful of the Supreme Court's guidance, we assess whether the record of conviction *conclusively* establishes defendant's ineligibility for resentencing under section 1172.6.

Defendant does not appear to dispute that a preliminary hearing transcript is a part of the "record of conviction," but instead contends the resentencing court engaged in improper factfinding based on the preliminary hearing transcript to find he was the actual killer.  He also contends the circumstances of his being the only person charged in the information and his admission to the section 12022, subdivision (b), knife use enhancement do not establish that he was the actual killer and that no one else was involved.

Insisting to the contrary, the People contend the following portions of the record of conviction, considered collectively, establish that defendant was

the actual killer:  (1) the change of plea form reflects defendant pleaded no contest to first degree murder and admitted a knife use enhancement; (2) the information demonstrates the prosecution "did not proceed on a theory of imputed malice or felony murder involving multiple participants"; and (3) uncontroverted evidence from the preliminary hearing shows defendant "acted alone in killing the victim."

After due consideration of the record of conviction, we cannot agree the record of conviction conclusively establishes defendant's ineligibility for resentencing.

First, the information charged defendant with committing murder "wilfully, unlawfully and feloniously, and with malice aforethought," but that allegation "is a generic charge permitting the prosecution to proceed on *any* theory of murder."  (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234 (*Rivera*).)  Indeed, "a charging decision does not establish any facts as a matter of law."  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339.)  Moreover, the fact that the information charged only defendant and named no co-defendants is of no moment.  Here, the People point to no authority indicating that separate charging documents cannot be filed against co-defendants, and as one court recently observed, there appears "no authority requiring prosecutors to try all codefendants together."  (*Ibid*.)  Consequently, the charging document does not foreclose the possibility that a co-defendant might be charged or at least involved.

Second, the change of plea form also falls short of establishing defendant's ineligibility for relief.  In particular, the form fails to substantiate the People's representation that defendant pled no contest to first degree "premeditated" murder.  True, the change of plea form shows defendant pled no contest to first degree murder, but critically, it does not indicate he

8

stipulated to any of the criteria that would presently render him ineligible. (§ 189, subd. (e)(1)–(3); cf. *Rivera, supra*, 62 Cal.App.5th at pp. 234–235.) And though defendant admitted the allegation that he personally used a knife during the murder (§ 12022, subd. (b)), the term "use" in this context can refer simply to displaying the weapon in a menacing manner. (*People v. Wims* (1995) 10 Cal.4th 293, 302.) As such, the admitted knife use enhancement does not conclusively establish that defendant was the actual killer or that he satisfied other criteria rendering him ineligible for resentencing. (§ 189, subd. (e)(2)–(3).)

Finally, the California Supreme Court is currently considering a split among the Courts of Appeal as to whether a court engages in impermissible fact finding by relying on a preliminary hearing transcript to deny a section 1172.6 petition at the prima facie stage.

The People rely on a line of cases—including *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), review granted June 28, 2023, S279670; *People v. Pickett* (2023) 93 Cal.App5th 982 (*Pickett*), review granted Oct. 11 2023, S281643; and *People v. Mares* (2024) 99 Cal.App.5th 1158 (*Mares*), review granted May 1, 2024, S284232—which have upheld denials at the prima facie stage where the evidence at the preliminary hearing was uncontroverted and the respective defendants offered no factual or legal basis to support their petitions.

Not surprisingly, defendant relies on other cases—exemplified by *People v. Williams* (2024) 103 Cal.App.5th 375, review granted Sept. 11, 2024, S286314—which reject the *Patton* line of authorities and would support a reversal in this case. In *Williams*, the Court of Appeal reasoned that "absent a factual finding or admission regarding the manner in which the offense was committed, even compelling, uncontroverted, and uncontradicted

9

testimony is not *conclusive* of a petitioner's guilt under a specific theory."
(*Williams*, at p. 403; see also *People v. Alazar* (2024) 105 Cal.App.5th 1100,
1109–1110; *People v. Davenport* (2021) 71 Cal.App.5th 476, 481 [trial court
erroneously relied on a preliminary hearing transcript to make the prima
facie determination where the defendant "did not stipulate to the transcript
as a factual basis for his plea"].)

We need not weigh in on this split because, as explained below, the
People's authorities are sufficiently distinguishable and do not call for
affirmance of the court's ruling here.

In *Patton*, *supra*, 89 Cal.App.5th 649, a defendant pled no contest to
attempted murder and admitted an allegation that he personally used and
discharged a firearm in the course of that crime (§ 12022.53, subd. (c)).
(*Patton*, at p. 653.)  The trial court denied his section 1172.6 petition at the
prima facie stage based on evidence presented at the preliminary hearing.
(*Id.* at pp. 654–655.)  Specifically, law enforcement officers had identified the
defendant as the shooter in a surveillance video of the crime based on:
(1) clothing the shooter wore, which was similar to clothing the defendant
wore in a Facebook photo; and (2) the shooter's gait.  (*Id.* at pp. 652–653 &
fn. 2.)  In affirming the denial of the petition, the Court of Appeal emphasized
that the defendant never offered any theory to support his implicit contention
that he was an accomplice and not the shooter.  (*Id.* at p. 657.)  Thus, because
"[t]he sworn testimony of police officers, based on surveillance video of the
crime, that [the defendant] committed the shooting was and is
uncontroverted," the court concluded no factfinding or weighing was
necessary to deny relief at the prima facie stage.  (*Id.* at p. 658.)

In *Pickett, supra*, 93 Cal.App.5th 982, the defendant pled guilty to
second degree murder and admitted a section 12022.5 firearm use allegation.

(*Pickett*, at p. 986.)  The trial court denied his section 1172.6 petition at the prima facie stage based on the preliminary hearing transcript, which included testimony from witnesses who saw the defendant confront the victim, draw a gun, and fire a shot into the air.  As the witnesses fled, they heard more shots, and one witness looked back and saw the victim on the ground with a gunshot wound.  (*Id.* at pp. 985–986.)  In upholding the denial, the Court of Appeal explained its reasoning as follows.  The "inference that [the defendant] acted alone and was the actual killer is uncontradicted and compelling.  [¶] . . . [¶] Under these circumstances, where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection *uncontroverted evidence* from the preliminary hearing transcript *showing that the defendant acted alone* in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing."  (*Id.* at p. 990, italics added.)

Finally, in *Mares*, *supra*, 99 Cal.App.5th 1158, the defendant pled guilty to voluntary manslaughter with a knife use enhancement, and eight counts of assault by means likely to produce great bodily injury.  (*Mares*, at pp. 1162–1163.)  The trial court denied his section 1172.6 petition at the prima facie stage based on evidence presented at the preliminary hearing, which included statements by the defendant and his girlfriend that the defendant stabbed the victim.  (*Mares*, at pp. 1162–1164.)  The Court of Appeal upheld the denial because the uncontradicted facts in the record of conviction, including the preliminary hearing transcript, made it "impossible" to find that the defendant was not the actual killer.  (*Id.* at p. 1167.)  The court explained it "need not credit the truth of any fact in the preliminary

11

hearing transcript.  What matters is that the record supports no theory other than those where [the defendant] was the actual killer." (*Ibid.*)

In sum, *Patton*, *Pickett*, and *Mares* each upheld a trial court's denial of a section 1172.6 petition at the prima facie stage where uncontroverted evidence at the preliminary hearing established that the defendant was the sole and direct perpetrator of the relevant offense.  (*Patton*, *supra*, 89 Cal.App.5th at pp. 652–653, 658; *Pickett*, *supra*, 93 Cal.App.5th at pp. 989–990; *Mares*, *supra*, 99 Cal.App.5th at pp. 1161–1162.)

In contrast, the evidence at defendant's preliminary hearing was circumstantial and inconclusive.  Unlike the situations in *Patton*, *Pickett*, and *Mares*, the preliminary hearing evidence did not clearly establish the time the victim was attacked or place defendant alone in the victim's house at the time of the attack.  In this regard, we observe the People's record citations fail to support their factual assertion that defendant "was the only individual inside of [the victim's] home at the time of the murder."  There was no surveillance video of the murder or events leading up the murder, and while some of the evidence certainly pointed to defendant as the killer, the transcript did not conclusively demonstrate that defendant acted by himself at the time of the murder.  Rather, as recounted above, during the midnight trip to the victim's home, defendant had asked his male housemate to turn off his vehicle headlights and to leave by a route different from those taken on previous occasions.  Defendant thereafter asked the male housemate to take him back to the victim's house at around 1:30 or 2:00 a.m., suggesting the victim might not have been dead after defendant's last visit at midnight.  Indeed, the pathologist estimated the time of death could have occurred "several hours" after midnight.  The transcript also included the testimony of defendant's male housemate that defendant took suits to the victim's home

12

during one of his visits, as well as the testimony of his female housemate that the day after she took him to the victim's home, she saw defendant with "a couple of other guys" associated with a blue car bringing the suits back home from the victim's house. Ultimately, the preliminary hearing evidence was susceptible of differing inferences and was not comparable to uncontroverted evidence of sole and direct perpetrator liability that *conclusively* established the defendants' ineligibility for relief found in *Patton*, *Pickett*, and *Mares*. (See *Curiel, supra*, 15 Cal.5th at p. 460.)

## DISPOSITION

The order denying the section 1172.6 petition is reversed. The matter is remanded to the superior court with directions to issue an order to show cause and to thereafter proceed as required by section 1172.6, subdivision (d).

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Rodríguez, J.

*People v. Johnson* (A168691)

13